**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

PAULA J. BUSHEE,

                              Plaintiff,

            v.                                              No. 05-CV-928
                                                             (LEK/DRH)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

**APPEARANCES:**                              **OF COUNSEL:**

BINDER & BINDER, P.C.                         CHARLES E. BINDER, ESQ.
Attorney for Plaintiff
215 Park Avenue South, 6th Floor
New York, New York 10003

HON. GLENN T. SUDDABY                         WILLIAM H. PEASE, ESQ.
United States Attorney for the                Assistant United States Attorney
   Northern District of New York
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER[1]**

        Plaintiff Paula J. Bushee ("Bushee") brought this action pursuant to 42 U.S.C. §

405(g) seeking review of a decision by the Commissioner of Social Security

("Commissioner") denying her application for benefits under the Social Security Act.

Bushee moves for a finding of disability and the Commissioner cross-moves for a

judgment on the pleadings.  Docket Nos. 5, 6.  For the reasons which follow, it is

_____

        [1]  This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

recommended that the Commissioner's decision be remanded for further proceedings.

## I.  Procedural History

On November 12, 2003, Bushee filed an application for disability insurance benefits ("DIB") pursuant to the Social Security Act, 42 U.S.C. § 401 et seq.  T. 45-48.[2]  On March 8, 2004, the application was denied.  T. 31-34.  Bushee requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ James J. Pileggi on October 8, 2004.  T. 425-51.  In a decision dated January 11, 2005, the ALJ held that Bushee was not entitled to disability benefits.  T. 10-20.  On February 1, 2005, Bushee filed a request for review with the Appeals Council.  T. 8-9.  The Appeals Council denied Bushee's request on May 24, 2005, thus making the ALJ's findings the final decision of the Commissioner.  T. 5-7.  This action followed.

## II.  Contentions

Bushee contends that the ALJ failed properly to afford controlling weight to her treating physicians' opinions, and credit properly her subjective complaints of pain and limitations.  She also contends that the ALJ's residual functional capacity ("RFC") assessment was flawed and that the ALJ erred by relying on the testimony of a vocational expert.  The Commissioner contends that there was substantial evidence to support the determination that Bushee was not disabled.

––––––––––––––––––

[2] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner.  Docket No. 4.

### III.  Facts

Bushee, now forty-eight years old, worked as a production laborer in a factory.  T. 97.  She previously worked in an amusement park and a restaurant.  T. 431, 440.  Bushee attended business college and is certified in computerized accounting.  T. 430.  Bushee alleges that she became disabled on April 1, 2001 due to a right knee impairment and brittle diabetes.  T. 45.

### IV.  Standard of Review

### A.  Disability Criteria

A claimant seeking disability benefits must establish that "he [or she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2003).  In addition, the claimant's impairments must be of such severity that he or she is not able to do previous work or any other substantial gainful work considering the claimant's age, education, and work experience, regardless of whether such work exists in the immediate area, whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied for work.  42 U.S.C. § 1382c(a)(3)(B) (2003).

The Commissioner uses a five-step process, set forth in 20 C.F.R. § 404.1520 and § 416.920, to evaluate disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he [or she] is not, the

3

> [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.  Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. §§ 404.1520, 416.920 (2007).

The plaintiff has the burden of establishing disability at the first four steps.  Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000).  However, if the plaintiff establishes that an impairment prevents him or her from performing past work, the burden then shifts to the Commissioner to determine if there is other work which the claimant could perform.  Id.

### B.  Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Shaw, 221 F.3d at 131 (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197,

4

229 (1938)); see Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Prentice v. Apfel, No. 96 Civ. 851(RSP), 1998 WL 166849, at *3 (N.D.N.Y. Apr. 8, 1998) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).  A court, however, cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).  If the Commissioner's finding is supported by substantial evidence, it is conclusive.  Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996).

## V.  Discussion

### A.  Medical Evidence

#### 1.  Right Knee

In April of 1994, Bushee began experiencing pain in her right knee while playing softball as a catcher.  T. 266, 277.  Bushee underwent knee replacement surgery in 1998. T. 277.  Bushee subsequently received steroid injections and Synvisc injections, and underwent arthroscopic surgery.  T. 208.  On November 28, 2000, Bushee underwent a second right knee replacement surgery, which was described by one physician as "[s]uccessful . . . in the sense that pain was relieved . . . . "  T. 142, 204.

On May 8, 2001, Dr. William Ketterer performed a manipulation of Bushee's right knee due to her complaints of stiffness.  T. 135, 142.  By October 16, 2001, Bushee had redeveloped stiffness and Dr. Ketterer performed a revision of the right knee replacement.

5

T. 142-47.  On January 21, 2002, Dr. Ketterer opined that Bushee "[m]ay return to work."

T. 199.  On April 19, 2002, Dr. Ketterer noted that while Bushee claimed that she walked

with "somewhat" of a limp, she was "essentially symptom free" while taking Voltaren.[3]  T.

198.

From October to December of 2001, Bushee underwent physical therapy.  T. 157-

95.  Bushee did "very well" in physical therapy.  T. 157.  Her range-of-motion and strength

improved.  Id.

On October 4, 2002, Bushee began treating with Dr. Jeffrey C. Gundel, an

orthopedic surgeon.  T. 424.  Bushee complained of a "significantly decreased range of

motion in the knee and that it buckles and gives out on her frequently."  Id.  Dr. Gundel

diagnosed her as suffering from a failed knee replacement revision.  Id.  On February 6,

2003, Dr. Gundel performed a revision on Bushee's right knee.  T. 253-56.  Approximately

one month later, Bushee reported that her knee was "more stable" than after her two prior

replacements.  T. 276.  Dr. Gundel remarked that Bushee was doing "well."  Id.  Dr.

Gundel recommended that she continue using a cane for ambulation and continue

attending physical therapy.  Id.  On May 8, 2003, Dr. Gundel prescribed a hinged knee

brace and recommended that Bushee continue performing a home exercise routine.  Id.

On April 28, 2004, Dr. Gundel completed a "Lower Extremities Impairment

Questionnaire" in which he opined that pain interferes with Bushee's ability to ambulate

effectively; that she needed or used a cane and knee brace; and that she was unable

effectively to climb stairs without the help of a handrail.  T. 405-06.  Bushee was able to sit

---

[3]  Voltaren is a nonsteroidal anti-inflammatory drug.  Physicians' Desk Reference
2307 (61st ed. 2007).

for one hour in an eight-hour workday, but must get up and move around every fifteen minutes for five-to-ten minutes at a time before sitting again.  T. 406.  Bushee could stand or walk less than one hour in an eight-hour workday.  Id.  Bushee could lift or carry up to ten pounds occasionally.  T. 407.  Bushee's symptoms were severe enough to interfere periodically with her attention and concentration, but she was capable of tolerating high stress work.  T. 408.  Bushee would need to take frequent unscheduled breaks to rest at unpredictable intervals for about fifteen minutes on average before returning to work.  T. 408-09.  Additionally, Bushee's impairments were likely to produce "good days" and "bad days," resulting in her absence from work more than three times a month on average.  Id.  Lastly, Bushee should not push, pull, kneel, bend, or stoop, and needed to avoid heights.  Id.

On July 28, 2004, Dr. Gundel noted that Bushee "is gaining some good strength [in her] knee by doing her home exercise program on a daily basis and walking distances."  T. 411.  Dr. Gundel found that there "is definitely an improvement in her muscle size and strength in her quads."  Id.  His impression was "[i]mproving status post knee revision."  Id.  Dr. Gundel recommended that Bushee continue taking Voltaren and Ultracet[4] and continue wearing her brace and use a cane, as needed.  Id.

## 2. Diabetes Mellitus

From May of 1994 to June of 2002, Bushee treated for diabetes mellitus with Paul

---

[4] Ultracet is an opioid analgesic.  Physicians' Desk Reference 2549 (59th ed. 2005).

Graether, a physician's assistant.[5]  T. 211-43.  While Bushee's diabetes was initially

described as "stable," her diabetes was poorly controlled by April of 2002.  T. 217.  On

June 21, 2002, Graether opined that Bushee needed to see a diabetologist and possibly

start taking insulin.  T. 216.

On January 20, 2003, Dr. Maggio noted that Bushee's "sugars are doing well . . . but they have been

gradually creeping up . . . . "  T. 288.  On April 14, 2003, Dr. Maggio opined that Bushee's

diabetes was "not under the best control" and increased her dosage of Lantus.[6]  T. 286.

However, by July 8, 2003, Bushee's blood sugar levels were "finally doing better."  T. 282.

On December 2, 2003, Bushee's diabetes was "doing much better."  T. 279.

On January 29, 2004, Dr. Maggio completed a Diabetes Mellitus Impairment

Questionnaire.[7]  T. 397-402.  Dr. Maggio noted that Bushee's prognosis was "good."  T.

397.  Bushee could sit between three and four hours in an eight-hour workday, but must

get up and move around every hour for five-to-ten minutes at a time before sitting again.

T. 400.  Bushee could stand or walk less than one hour in an eight-hour day and could lift

or carry up to five pounds occasionally.  T. 400-01.  Bushee's symptoms were severe

enough to interfere with her attention and concentration frequently, but she was capable of

_____

[5]  Graether also treated Bushee for, inter alia, right carpal tunnel syndrome, renal
calculi, stress incontinence, and hyperlipidemia.  T. 211.

[6]  Lantus is an injectable insulin solution.  Physicians' Desk Reference 2909 (61st
ed. 2007).

[7]  Dr. Maggio stated that he completed the assessment "with direct contact with
[the] patient."  T. 278.  Dr. Maggio noted that he requested Bushee's assistance because
"it is impossible to fill . . . out [the assessment] without the patient's presence."  Id.

tolerating moderate work stress.  T. 401.  Bushee was likely to be absent from work as a result of her impairments or treatment more than three times a month on average.  T. 401-02.  Lastly, Bushee should not push, pull, kneel, bend, or stoop.  T. 402.

On February 20, 2004, Kathleen M. Baidy, an optometrist, completed a functional assessment.  T. 244-48.  Dr. Baidy indicated that she had seen Bushee only once on November 8, 2002.  T. 244, 246.  Dr. Baidy diagnosed myopic astigmatism in both eyes.  T. 245.  Examination revealed corrected vision of 20/25 in the right eye and 20/20 in the left eye.  Id.  Dr. Baidy found no conditions significant to Bushee's recovery.  T. 248.

The record also contains the opinions of two Agency review physicians.  First, Dr. Richard Blaber opined on June 10, 2003 that Bushee was capable of lifting ten pounds occasionally, sitting for six hours, and standing or walking for two hours.  T. 273.  Second, Dr. Judith Bodnar opined on March 3, 2004 that Bushee was capable of standing or walking for four hours, and sitting for six hours in an eight-hour period.  T. 296.  Dr. Bodnar also found that Bushee could occasionally use stairs, but should not balance.  Id.

### B.  Treating Physician's Rule

Bushee contends that the ALJ improperly discounted the opinions of her treating physicians, Drs. Maggio and Gundel.  Docket No. 5 at 17-21.  The Commissioner contends that the ALJ properly evaluated the opinion evidence.  Docket No. 6 at 16-21.

When evaluating a claim seeking disability benefits, factors to be considered include objective medical facts, clinical findings, the treating physician's diagnoses, subjective evidence of disability, and pain related by the claimant.  Harris v. R.R. Ret. Bd.,

948 F.2d 123, 126 (2d Cir. 1991).  Generally, more weight is given to a treating source.

Under the regulations, a treating source's opinion is entitled to controlling weight if

well-supported by medically acceptable clinical and laboratory diagnostic techniques and

is consistent with other substantial evidence in the record.  20 C.F.R. §§ 404.1527(d)(2),

416.927(d)(2) (2007); Shaw, 221 F.3d at 134.  Before a treating physician's opinion can be

discounted, the ALJ must provide "good reasons."  Schaal v. Apfel, 134 F.3d 496, 505 (2d

Cir. 1998).

The ALJ is required to assess the following factors in determining how much weight

to accord the physician's opinion: "(i) the frequency of examination and the length, nature,

and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the

opinion's consistency with the record as a whole; (iv) whether the opinion is from a

specialist; and (v) other relevant factors."  Schaal, 134 F.3d at 503.  If other evidence in

the record conflicts with the opinion of the treating physician, this opinion will not be

deemed controlling or conclusive, and the less consistent the opinion is, the less weight it

will be given.  Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999).  Ultimately, the final

determination of disability and a claimant's inability to work rests with the Commissioner.

Id. at 133-34; see 20 C.F.R. §§ 404.1527(e), 416.927(e) (2007).

### 1.  Dr. Maggio

In his decision, the ALJ reviewed Dr. Maggio's records and then assigned less than

controlling weight to his opinion.  T. 16.  The ALJ found that Dr. Maggio's opinion was

"disproportionate" with evidence in the record and in his own treatment notes.  Id.  Based

on the following, the Court finds that the ALJ's determination is supported by substantial

evidence.

First, the assessment itself offers little in the way of supporting evidence. For example, when asked to identify the laboratory and diagnostic test results which demonstrate or support the diagnosis of Type II Diabetes, Dr. Maggio simply stated, "12-2003[,] FBS 146 [and] Hba.c 6.8." T. 398. To the extent that Dr. Maggio may be referring to laboratory results from December of 2003, it is unclear how this information supports Dr. Maggio's opinion. Moreover, when asked to explain the basis for his conclusion that Bushee was capable of tolerating only moderate work stress, Dr. Maggio provided no response. T. 401.

Second, as the ALJ found, Dr. Maggio's treatment notes did not fully support the assessment. For instance, when asked to identify the positive clinical findings that demonstrate or support the diagnosis of Type II Diabetes, Dr. Maggio indicated, inter alia, episodic vision blurring. T. 397-98. However, Dr. Maggio's treatment note dated January 20, 2003 states that Bushee "denies headaches or problems with her vision. Her eye exams are up to date." T. 288. Dr. Maggio also indicated in the assessment that his findings included "difficulty thinking/concentrating," but his progress notes contain no findings describing difficulty thinking or concentrating. Rather, the notes reflect that on March 14, 2003, Bushee denied "any episodes of light-headedness . . . or low sugar episodes." T. 286. Moreover, on December 2, 2003, Bushee was "feeling well [and] has not had any low sugar episodes" and her diabetes was "doing much better." T. 279. The notes also contain Dr. Maggio's repeated findings that Bushee "looks well" and was in "no distress." T. 279, 281-83.

Third, as noted by the ALJ, Dr. Maggio's opinion is contradicted by other evidence

11

in the record.  T. 16.  For example, Dr. Baidy, an optometrist, found no conditions that

were significant to Bushee's recovery.  T. 248.  Additionally, Dr. Blaber, an Agency review

physician, opined that Bushee was capable of lifting ten pounds occasionally, sitting for six

hours, and standing or walking for two hours.  T. 273.  Dr. Bodnar, also an Agency review

physician, opined that Bushee was capable of standing or walking for four hours, and

sitting for six hours in an eight-hour period.  T. 296.  The Court notes that "State agency

physicians are qualified as experts in the evaluation of medical issues in disability claims.

As such their opinions may constitute substantial evidence if they are consistent with the

record as a whole."  Leach ex rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935,

at *9 (S.D.N.Y. Jan. 22, 2004) (citing 20 C.F.R. § 416.927(f); Mongeur v. Heckler, 722

F.2d 1033, 1039 (2d Cir.1983)).  Further, the regulations provide, "[A]dministrative law

judges must consider findings of State agency medical and psychological consultants or

other program physicians or psychologists as opinion evidence . . . . "  20 C.F.R. §§

404.1527(f)(2)(i), 416.927(f)(2)(i) (2007).

In light of the foregoing, the ALJ properly afforded less than controlling weight to Dr.

Maggio's opinion.  Therefore, it is recommended that the Commissioner's determination in

this regard be affirmed.

## 2.  Dr. Gundel

In his decision, the ALJ reviewed Dr. Gundel's treatment notes.  T. 15-16.  The ALJ

then reviewed Dr. Gundel's opinion as set forth in the Lower Extremities Impairment

Questionnaire, and found that apparently based on this opinion, Bushee did not meet the

requirements of Listing 1.03.[8]  T. 16.

While it appears that the ALJ relied on Dr. Gundel's opinion in order to find that

Bushee did not meet the requirements of Listing 1.03, it also appears that the ALJ rejected

Dr. Gundel's opinion to the extent that the RFC determination does not encompass certain

limitations established by Dr. Gundel.  The regulations require that the Commissioner's

notice of determination or decision "give good reasons" for the weight given a treating

source's opinion.  20 C.F.R. § 404.1527(d)(2).  Failure to provide "good reasons" for not

crediting the opinion of a claimant's treating physician is a ground for remand.  Snell, 177

F.3d at 133; Halloran v. Barnhart, 362 F.3d 28, 32-33 (2d Cir. 2004); see also  S.S.R. 96-

2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996) (requiring that an ALJ's decision "must

be sufficiently specific to make clear to any subsequent reviewers the weight . . . [given] to

the treating source's medical opinion and the reasons for that weight").  In this case, the

ALJ failed to explain the weight assigned to Dr. Gundel's opinion and the reasons for

discounting this opinion.  Accordingly, remand is recommended for the ALJ to correct

these deficiencies.


### C.  RFC and Vocational Expert

Bushee argues that the RFC determination is flawed and that the ALJ erred by

relying on the testimony of a vocational expert.  Docket No. 5 at 21-23.  Defendant argues

that the ALJ properly relied on the vocational expert's testimony.  Docket No. 6 at 21-22.

---

[8]  Listing 1.03 provides, "Reconstructive surgery or surgical arthrodesis of a major
weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and
return to effective ambulation did not occur, or is not expected to occur, within 12 months
of onset."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.03 (2007).

RFC describes what a claimant is capable of doing despite his or her impairments considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations which go beyond the symptoms.  Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (Hurd, D.J.); see 20 C.F.R. §§ 404.1545, 416.945 (2007).  "RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations."  Smith v. Apfel, 69 F. Supp. 2d 370, 378 (N.D.N.Y. 1999) (citation omitted).  In assessing RFC, the ALJ must make findings specifying what functions the claimant is capable of performing, not simply making conclusory statements regarding a claimant's capabilities.  Martone, 70 F. Supp. 2d at 150.  RFC is then used to determine whether the claimant can perform his or her past relevant work in the national economy.  New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); see 20 C.F.R. §§ 404.1560, 416.960 (2007).

Where a claimant is able to demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner to prove that a job exists in the national economy which the claimant is capable of performing.  See Curry, 209 F.3d at 122; 20 C.F.R. §§ 404.1560(c), 416.960(c) (2007).  "[W]ork exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions in the country."  20 C.F.R. §§ 404.1566(a), 416.966(a) (2007).  The ALJ may apply the grids or consult a vocational expert.  See Heckler v. Campbell, 461 U.S. 458, 462 (1983); Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2 (2007).

The vocational expert may testify as to the existence of jobs in the national economy, and as to the claimant's ability to perform any of those jobs, given his functional

limitations.  See Colon v. Comm'r of Soc. Sec., No. 6:00-CV-0556, 2004 WL 1144059, at
*6 (N.D.N.Y. Mar. 22, 2004) (Sharpe, J.).  A vocational expert's testimony is useful only if it
addresses whether the particular claimant, with his limitations and capabilities, can
realistically perform a particular job.  See Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d
Cir.1984) (citation omitted).  The ALJ is responsible for determining the claimant's
capabilities based on all the evidence, and the hypothetical questions must present the full
extent of the claimant's impairments to provide a sound basis for the vocational expert's
testimony.  Colon, 2004 WL 1144059, at *6.  However, there must be "'substantial record
evidence to support the assumption upon which the vocational expert based his opinion.'"
Id. (quoting Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983)).

        Here, the ALJ found that Bushee established that her impairments prevented a
return to her past relevant work.  T. 18.  Therefore, the burden shifted to the
Commissioner to prove that work exists in the national economy which Bushee is capable
of performing.  Accordingly, the ALJ elicited the testimony of a vocational expert, Dr.
Leona Liberty.  T. 446-49.  The ALJ concluded that Bushee retained an RFC to perform a
limited range of sedentary work in that she could lift or carry at least ten pounds, sit for
thirty minutes at a time, use foot controls occasionally, and stand for five to ten minutes at
a time with the option to alternate between sitting and standing.  T. 17.  The ALJ then
asked Dr. Liberty to consider an individual of Bushee's age, education, work history, and
RFC.  T. 446-48.  The vocational expert testified that such an individual could work as a
small product assembler (250,000 jobs nationally and 250 jobs regionally).  T. 447-48.

        Nevertheless, Bushee argues that this RFC determination is "inconsistent" with the
opinions of her treating physicians, Drs. Maggio and Gundel.  As noted, Dr. Maggio opined

15

that Bushee's symptoms were severe enough to interfere frequently with her attention and concentration and that she was likely to be absent from work as a result of her impairments or treatment more than three times a month on average.  T. 401-02.  Dr. Gundel similarly concluded that Bushee's symptoms were severe enough to interfere periodically with her attention and concentration and that she was likely to be absent from work as a result of her impairments or treatment more than three times a month on average.  T. 407-08.  Bushee points out that Dr. Liberty testified that an individual, who missed work or would have to leave work three or more days a month on an irregular or random basis and who was "off task" for ten to fifteen percent of the work day, excluding the usual work breaks or lunch period, would be unable to perform any job.  See T. 448.

The Court has already determined that the ALJ's discrediting of Dr. Maggio's opinion was supported by substantial evidence.  See Part V(B)(1) supra.  However, the Court also determined that the ALJ erred by failing to explain the weight assigned to Dr. Gundel's opinion and his reasons for discounting this opinion.  See Part V(B)(2) supra.  Therefore, the Court is unable to find that the RFC determination is supported by substantial evidence because whether the ALJ properly rejected Dr. Gundel's opinion is unclear.  See Colon, 2004 WL 1144059, at *6 (holding that an RFC determination must include all of a claimant's limitations).  Accordingly, the Court recommends remand for a re-evaluation of Bushee's RFC.

Additionally, the ALJ failed to discuss specifically Bushee's ability to walk, which is a striking omission considering that Bushee alleged disability due to, inter alia, a right knee impairment and that the ALJ found that Bushee's "right knee problems" were a severe impairment.  T. 17, 45.  Also, Bushee testified that she uses a cane and wears a knee

16

brace, and that her knee "locks" on her and swells if she walks "a lot."  T. 432, 434, 444.

An ALJ must make findings specifying what functions the claimant is capable of

performing.  Martone, 70 F. Supp. 2d at 150.  While the ALJ stated that Bushee was

limited to "a range of sedentary work," T. 17, the regulations provide that even sedentary

jobs involve "a certain amount of walking . . . in carrying out job duties."  20 C.F.R. §

404.1567(a).  Moreover, the ALJ failed to discuss other exertional abilities, such as

Bushee's abilities to push and pull.  See S.S.R. 96-4p, 1996 WL 374187, at *2 (S.S.A. July

2, 1996) ("Exertional limitations or restrictions affect an individual's ability to meet the

seven strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and

pulling) . . . .")).  Therefore, the Court recommends remand in order for the ALJ to specify

what functions the claimant is capable of performing.

To the extent that Bushee challenges Dr. Liberty's testimony, on remand the ALJ

shall obtain the opinion of a vocational expert if Bushee's nonexertional limitations present

significant limitations.  See Bapp v. Bowen, 802 F.2d 601, 605-06 (2d Cir. 1986) (holding

that if a claimant's nonexertional impairments "significantly limit the range of work

permitted by his exertional limitations" the application of the grids is inappropriate).


**D.  Credibility**

Bushee contends that the ALJ improperly evaluated her credibility.  Docket No. 5 at

23-25.  The Commissioner contends that the ALJ properly considered Bushee's credibility.

Docket No. 6 at 22-25.

The basis for establishing disability includes subjective complaints of pain even

where the pain is unsupported by clinical or medical findings provided that the underlying

impairment can be "medically ascertained."  20 C.F.R. §§ 404.1529, 416.929 (2007); see also Snell, 177 F.3d at 135.  A finding that a claimant suffered from disabling pain requires medical evidence of a condition that could reasonably produce such pain.  An ALJ must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be expected to be consistent with the medical and other evidence.  20 C.F.R. §§ 404.1529, 416.929; Martone, 70 F. Supp. 2d at 150.  Pain is a subjective concept "difficult to prove, yet equally difficult to disprove" and courts should be reluctant to constrain the Commissioner's ability to evaluate pain.  Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983).  If there is a rejection of the claims of disabling pain, the ALJ must provide specific reasons for doing so.  Saviano v. Chater, 956 F. Supp. 1061, 1071 (E.D.N.Y. 1997).

The claimant's credibility and motivation, as well as the medical evidence of impairment, are used to evaluate the true extent of the alleged pain and the degree to which it hampers the applicant's ability to engage in substantial gainful employment.  See Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1978); Lewis v. Apfel, 62 F. Supp. 2d 648, 653 (N.D.N.Y. 1999).  If there is conflicting evidence about a claimant's pain where the degree of pain complained of is not consistent with the impairment, the ALJ must make credibility findings.  Donato v. Sec'y of HHS, 721 F.2d 414, 418-19 (2d Cir. 1983).  The ALJ must consider several factors pursuant to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3):

> (i) [The claimant's] daily activities;
>
> (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s];

(v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;

(vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

In his decision, the ALJ acknowledged the existence of severe impairments, but found that Bushee "exaggerat[ed]" her complaints, which the ALJ found were "not entirely credible" based principally on a lack of supporting medical evidence. T. 17. The ALJ specifically discussed Bushee's diabetes and hypertension,[9] noting the lack of objective medical evidence that "suggests or implies that the claimant has any diabetic retinopathy, significant neurological damage, artherosclerosis or end organ damage to any nerve fibers, muscles, tissue, glands, etc." T. 16.

However, the ALJ failed to provide a similar discussion relating to Bushee's right knee problems, which he found were a severe impairment. T. 17. Instead, the ALJ simply concluded that "the evidentiary objective medical evidence does not reflect the incapacitating symptoms that were described by the claimant . . . " T. 17. While an ALJ may properly reject subjective complaints after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, the ALJ must set forth

---

[9] Bushee did not allege hypertension as one of her disabling conditions in her initial application. See T. 45.

his reasons "with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999); see also S.S.R. 96-7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996) ("The . . . decision must contain specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to . . . any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").  In this case, the ALJ failed to set forth his reasons for rejecting Bushee's claims regarding Bushee's right knee with sufficient specificity.  The ALJ failed to describe which specific "incapacitating symptoms" he rejected and on which specific medical evidence he relied to reject those symptoms.

The ALJ also stated that he also based the credibility determination on "the inconsistencies pointed out above."  T. 17.  However the ALJ provides no clear indication as to which inconsistencies he refers.  To the extent the ALJ found that Bushee's "allegations of total disability" were inconsistent with her stated activities, it is unclear how this testimony conflicts.  See T. 16-17.  The ALJ pointed out that Bushee stated that she was able to "watch television, do laundry, read, shower, cook, care for pets, groom herself, play cards, chat on the internet, attend sporting events, etc."  T. 16-17.  The ALJ stated, "These activities require some form of and/or combination of at least adequate bending, extension, flexion and concentration.  As such, it is very difficult to make a cogent argument for total disability."  T. 17.  However, the Second Circuit has frequently rejected determinations that a person is not disabled based on minimal activities of daily life not engaged in "for sustained periods comparable to those required to hold a sedentary job." Sarchese v. Barnhart, No. 01-CV-2172, 2002 WL 1732802, at *8 (E.D.N.Y. July 19, 2002)

(quoting Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 643 (2d Cir. 1983) (other citation omitted)).  The mere fact that an individual is mobile and able to engage in some light tasks at his home does not alone establish that he is able to engage in substantial gainful activity.  Lecler v. Barnhart, No. 01 Civ. 8659, 2002 WL 31548600, at *7 (S.D.N.Y. Nov. 14, 2002) (quoting Gold v. Sec. of Health, Ed. & Welfare, 463 F.2d 38, 41 n.6 (2d Cir. 1972)).  Thus, the mere fact that Bushee engaged in minimal activities of daily living does not alone preclude a finding of disability.

In light of the foregoing, the Court is unable to find that the credibility determination is supported by substantial evidence because the ALJ failed to set forth his reasons for rejecting Bushee's claims regarding her right knee with sufficient specificity.  Therefore, it is recommended that the matter be remanded for a proper evaluation of Bushee's credibility.


### VI.  Remand or Reversal

A reviewing court has the authority to reverse with or without remand.  42 U.S.C. §§ 405(g), 1383(c)(3) (2003).  Remand is appropriate where there are gaps in the record or further development of the evidence is needed.  Curry, 209 F.3d at 124.  Reversal is appropriate, however, where there is "persuasive proof of disability" in the record and remand for further evidentiary development would not serve any purpose.  Id.; see also Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980).  Here, the record is unclear regarding the issues discussed above.  Accordingly, it is recommended that the decision of the Commissioner be remanded for further proceedings rather than reversed.

## VII.  Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the decision denying disability benefits be **REMANDED** for further proceedings as described above.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED:    December 10, 2007
          Albany, New York

_David R. Homer_

United States Magistrate Judge